# STOCK AND MEMBERSHIP UNIT PURCHASE AGREEMENT

THIS STOCK AND MEMBERSHIP UNIT PURCHASE AGREEMENT, made and entered into this 22nd day of August, 2016, (hereinafter referred to as the "Agreement"), by and between Brandon L. Freed and Ronald Freed, as Sellers, and Tony G. Forson and Scott D. Cooper, as Purchasers.

WITNESSETH:

WHEREAS, Sellers are the owners of outstanding capital stock and membership units of the following corporations and limited liability companies:

    Above Par Transportation, Inc., a Missouri corporation, one hundred (100) shares (hereinafter referred to as "Above Par");

    FCF Investments, L.L.C., a Missouri limited liability company, twenty-five percent (25%), as represented by one hundred (100) units (hereinafter referred to as "FCF"); and

    3FC Investments, L.L.C., a Missouri limited liability company, twenty-five percent (25%), as represented by one hundred (100) units (hereinafter referred to as "3FC").

hereinafter referred to collectively as "the Companies";

WHEREAS, Sellers desire to sell said stock and membership units and divest themselves of the Companies;

WHEREAS, Purchasers desires to purchase said stock and membership units in the same proportion, so that following closing, each will own two hundred (200) shares of stock and fifty percent (50%), or two hundred (200) units, in the Company; and

WHEREAS, the parties hereto have reached an understanding providing for the sale of said stock and membership units by Sellers to Purchasers and desire to enter into and

**EXHIBIT A**

effectuate this Agreement providing for the purchase of said stock and membership units by Purchasers upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and promises hereinafter set forth, the parties hereto agree as follows:

1. <u>Sale and Purchase of Shares and Membership Units</u>. Subject to the terms and conditions of this Agreement, at the Closing, Purchasers agrees to purchase from Sellers and Sellers agree to sell to Purchasers, Sellers' entire interest in the Companies thereof, together with all of the shares and membership units of the Companies owned by the Sellers. Upon payment of the sale price, the Sellers shall deliver to Purchasers certificates evidencing the shares and membership units of the Companies owned by Sellers, duly endorsed for transfer. The purchase price for the shares and membership units of the Companies shall be paid in accordance with Section 3 hereof.

2. <u>Closing</u>. The Closing of the sale and purchase of said shares and membership units shall, unless another date and time is agreed to in writing by the parties hereto, take place as of August 22, 2016, with the actual physical closing to take place on August 23, 2016 (hereinafter referred to as the "Closing").

3. <u>Purchase Price</u>. The purchase price of the stock and membership units being purchased under this Agreement shall be the assumption and payment of certain debt/liabilities, as outlined herein:

a) <u>Freed Transportation, Inc. loan balance of $72,584.40</u> – $40,000.00 to be paid at closing with remaining $32,584.40 to be paid contingent upon positive cash flow, as determined by the Company's financial statements provided by the Company's accountant.

b) <u>BSF Investments, L.L.C. balance of $75,775.00</u> – back lease payments to be paid quarterly, based upon the Company's ability to cash flow the payments, as determined by financial statements provided by the Company's accountant.

c) <u>Freed Transportation, Inc. balance of $53,250.00</u> – back lease payments to be paid quarterly, based upon the Company's ability to cash flow the payments, as determined by financial statements provided by the Company's accountant.

d) BSF Investments and Freed Transportation will be allowed to park equipment at the Webb City Terminal for a period of at least one (1) year at no cost. Removal terms shall be subject to this Agreement. Access shall be during normal business hours; this right is contingent upon Sellers' equipment being leased to Above Par.

e) BSF Investments and Freed Transportation will be allowed to use up to 1,000 square feet of warehouse space of the Webb City terminal for a term of one (1) year, with removal terms subject to this negotiation on September 1, 2017. Access shall be during normal business hours. This right is contingent upon Sellers' equipment being leased to Above Par.

f) BSF Investments and Freed Transportation will be allowed to use the shop for minor truck repairs, at no cost. Access shall be during normal business hours. This right is contingent upon Sellers' equipment being leased to Above Par.

g) BSF Invesments and Freed Transportation will at their option, remain leased to Above Par upon the terms as outlined in the Lease Agreements.

h) <u>Health Insurance</u>. At the Closing, it is mutually agreed between the parties that family health insurance shall be provided for the benefit of Brandon L. Freed until December 31, 2016.

i) Payments related to subparagraphs a), b), and c) above shall be immediately due and payable upon the sale of the Company. Proportionate payment will be made on any back lease payment of both Sellers and Purchasers, as set forth in paragraphs b) and c) above. For example, if Purchasers determine that $4,000.00 is to be applied to back payments, the proportionate amount will be as follows:

| Company | Back Lease Due | Percentage |
|---|---|---|
| BSF Investments | $75,775.00 | 32% |
| Freed Transportation | $53,250.00 | 22% |
| Cooper Equipment | $63,520.00 | 26% |
| Tocat Transportation | $49,965.00 | 20% |
| *Total* | *$242,510.00* | *100%* |

So, referencing the above outline of percentages, the payment of $4,000.00 would be divided as follows:

| | |
|---|---|
| BSF Investments | $1,280.00 |
| Freed Transportation | $880.00 |
| Cooper Equipment | $1,040.00 |
| Tocat Transportation | $800.00 |

3

Sellers shall have the right to receive Purchasers' financial statements, prepared by Purchasers' accountant and provided to Purchasers' lenders, regarding the ability of Purchasers to make payment.

j) <u>Consulting Services Agreement</u>. Concurrently with the execution and delivery of this Stock and Membership Unit Purchase Agreement at the Closing, Purchasers and the Companies will compensate Seller Ronald Freed until August 26, 2016, and Brandon L. Freed will continue to be compensated until October 7, 2016.

4. <u>Assumption of Liability</u>. Purchasers shall assume Sellers' liabilities and obligations under those contracts, leases, instruments and other commitments incurred in the ordinary course of the Companies. Specifically, Purchasers shall endeavor to obtain Sellers release, from among others, all obligations to and guarantees in favor of People's Bank and other lenders of Above Par, whether secured or unsecured. Purchasers shall indemnify and hold Sellers harmless in any such debt.

5. <u>Contingencies and Escrow of Certain Closing Proceeds</u>. Notwithstanding anything contained herein, Purchasers' obligation to the close the purchase is contingent upon Purchasers entering into satisfactory financing agreements with People's Bank. Appropriate financing shall be secured by no later than the close of business on August 23, 2016.

6. <u>Representations and Warranties of Purchasers</u>.

a) Purchasers represents, warrants and agrees that he has the financial wherewithal and capacity to enter and effectuate this Agreement and to fulfill the obligations undertaken herein, and that he will at all times conduct himself and the affairs of the Companies' businesses in a proper and professional manner.

b) Sellers shall have no responsibility or liability whatsoever for any disclosed past, or any present or future liabilities or obligations arising out of the businesses of the Companies, all of which liabilities and obligations shall, with the purchase by Purchasers of the Sellers' outstanding stock and membership units, be assumed and discharged by the Companies or by Purchasers and Purchasers agrees to indemnify Sellers for any liability or expenses including attorneys' fees which Sellers may incur in connection therewith.

c) Following closing, Purchasers shall operate the Companies in such manner in the ordinary course of business, and to and until the purchase price is paid, Sellers shall be entitled to inspect all bonds and stocks of Company.

4

Case 3:21-cv-05056-DPR   Document 19-1   Filed 09/09/21   Page 4 of 10

7. Representations and Warranties of Sellers.

   a) Concerning Sellers. Sellers represent and warrant to Purchasers as follows:

   1) Sellers are the owners of all of the shares of stock and membership units in the Companies, will not sell, dispose of or encumber any of such shares or membership units prior to the Closing, and have complete and unrestricted power to sell said shares and membership units.

   2) The sale contemplated by this Agreement will not constitute a violation of the Companies' Articles of Incorporation, Bylaws, or any other agreement to which Sellers, or the Companies, or any of them, are parties or which otherwise affect the shares and membership units that are the subject to this Agreement.

   b) Concerning the Companies.

   1) Corporate Status.

   (i) Above Par Transportation, Inc. is a corporation duly organized and existing in good standing under the laws of the State of Missouri, and has the corporate power to own properties and carry on business as now being conducted.

   (ii) FCF Investments, L.L.C. is a limited liability company duly organized and existing in good standing under the laws of the State of Missouri, and has the corporate power to own properties and carry on business as now being conducted.

   (iii) 3FC Investments, L.L.C. is a limited liability company duly organized and existing in good standing under the laws of the State of Missouri, and has the corporate power to own properties and carry on business as now being conducted.

   All necessary corporate action has been taken to authorize the execution and delivery of this Agreement by the Sellers. The consummation of such transactions will not violate any provision of the articles of incorporation or bylaws or of any mortgage, lien, lease, instrument, order, judgment, decree, or agreement to which the Sellers, the Companies, or any of them, are subject.

5

2) <u>Stock</u>. All of said outstanding shares are fully paid and non-assessable. There are no outstanding options, warrants, contracts, calls, commitments or demands of any character whereby the Companies could be required to issue or sell any additional stock.

3) <u>Title to Property</u>. The Seller have good and marketable title to all of the stock and membership units being conveyed hereunder, and the same are free and clear of any and all mortgages, liens, pledges, charges, or encumbrances.

4) <u>Litigation</u>. There are no actions, suits or proceedings pending or, to the knowledge of Sellers, threatened against or affecting Sellers or the Companies other than the following:

5) <u>Commission</u>. There are no agreements or arrangements whereby any third party would or will be entitled to a commission or any other compensation as a result of the consummation of the transactions contemplated hereunder.

6) <u>Compliance with Law</u>. The Companies have complied in all material respects with all applicable statues, rules, regulations, ordinances, codes, orders, licenses, franchises, permits and authorizations, including, but not limited to those relating to the zoning, environmental, employment, and occupational safety matters. The Companies have not received any notice of any violation with respect to any such matter.

8. <u>Conditions to Closing by Sellers</u>. The obligation of Sellers to consummate the transactions contemplated by this Agreement is subject to the satisfaction of the following conditions precedent, any one or more of which may, however, be waived by Sellers in writing at Sellers' option:

a) Representations and Warranties. The representations and the warranties of Purchasers contained herein shall be true as of the Closing.

b) <u>Performance</u>. Purchasers shall have performed all agreements on his part required to be performed at or before the Closing.

9. <u>Conditions to Closing by Purchasers</u>. The obligation of Purchasers to consummate the transactions contemplated by this Agreement is subject to the satisfaction of the following conditions precedent, any one or more of which may, however, be waived by Purchasers in writing at Purchasers' option:

a) <u>Representations and Warranties</u>. The representations and warranties of Sellers contained herein shall be true as of the Closing date.

b) <u>Performance</u>. The Sellers shall have performed all Agreements on Sellers' part required to be performed at or prior to the Closing.

c) <u>Laws and Regulations</u>. On the date of the Closing, there shall exist no violations of, or changes since the date hereof, in any law or regulation materially affecting any of the properties of the Sellers or the operations of the Companies as presently conducted.

10. <u>Deliveries at Closing by Sellers</u>. At the Closing, Sellers shall deliver to the Purchasers the following:

a) <u>Resolutions</u>. A copy of the Resolutions adopted by the Board of Directors and Stockholders of the Companies showing the due authorization of this Agreement and the transactions contemplated hereby, certified by the secretary of each of the Companies as of the Closing Date;

b) <u>Certificates of Stock</u>. Certificates representing one hundred (100) shares of each Seller of the issued and outstanding stock of Above Par Transportation, Inc.; twenty-five percent (25%), or one hundred (100) units each, of FCF Investments, L.L.C., and twenty-five percent (25%), or one hundred (100) units each, of 3FC Investments, L.L.C.

c) <u>Resignations</u>. Sellers will resign as officers and directors of the Companies.

d) <u>Additional Instruments</u>. Such additional instruments, consents, endorsements, certificates and documents as the Purchasers or Purchasers' counsel may reasonably consider necessary to transfer to and vest in the Purchasers marketable title to the assets of Sellers to be purchased hereunder.

11. <u>Deliveries at Closing by the Purchasers</u>. At the Closing, Purchasers shall deliver to Sellers the following:

12. <u>Indemnity</u>. Sellers agree to indemnify and hold harmless Purchasers, his employees and agents and their successors and assigns from and against any and all losses, liabilities, claims, damages and expenses including reasonable attorneys' fees suffered by Purchasers as a result of:

a) any breach by Sellers of the covenants and agreements contained herein; and

b) any inaccuracy in or breach of any of the warranties and representations made by Sellers herein.

Purchasers agrees to indemnify and hold harmless Sellers, their employees and agents and their successors and assigns from and against any and all losses, liabilities, claims, damages and expenses including reasonable attorneys' fees suffered by Sellers as a result of:

a) any breach by Purchasers of the covenants and agreements contained herein; and

b) any inaccuracy in or breach of any of the warranties and representations made by Purchasers herein.

13. <u>Termination</u>. This Agreement may be terminated at any time prior to the Closing by the written agreement of the parties hereto.

14. <u>Payment of Attorney's Fees</u>. Purchasers and Sellers agree that the Companies will pay any and all attorney's fees, accountant's fees, and consultant's fees incurred by them in connection with the negotiation and preparation of this Agreement and related documents.

15. <u>Amendments</u>. This Agreement may be amended in any or all respects, but only by the written agreement of the parties hereto.

16. <u>Severability</u>. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction, as determined by a Court of competent jurisdiction, shall, in that jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating or making unenforceable the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

17. <u>No Adequate Remedy at Law - Injunction</u>. Sellers acknowledge that any remedy at law available to Purchasers for any breach of the non-compete covenants contained in this Agreement will be inadequate and agree that Purchasers shall be entitled to injunctive relief against any such breach. This remedy shall be in addition to any other remedies available to Purchasers at equity or at law. Waiver by Purchasers of a breach of any provision contained herein shall not operate or be construed as a waiver of any subsequent breach.

18. <u>Survival of Representations and Warranties</u>. All representations, warranties, covenants and agreements contained herein shall survive the Closing.

19. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefits of the parties hereto and their respective heirs, representatives, successors, transferees and assigns.

20. <u>Assignment</u>. This Agreement is personal in its nature and none of the parties hereto shall, without the written consent of the others, assign or transfer this Agreement or any rights or obligations hereunder.

21. <u>Law Governing</u>. This Agreement is entered into under the laws of the State of Missouri and shall be governed, construed and interpreted in accordance with the laws of that State.

22. <u>Prior Agreements</u>. This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements, negotiations and discussions pertaining thereto.

IN WITNESS WHEREOF, the parties hereto have caused this Stock and Membership Unit Purchase Agreement to be executed as of the day and year first written above.

SELLERS:

_____
Brandon L. Freed

_____
Ronald Freed

PURCHASERS:

_____
Tony G. Forson

_____
Scott D. Cooper

9

ABOVE PAR TRANSPORTATION, INC.

By: _____
President

ATTEST:

_____
Secretary


FCF INVESTMENTS, L.L.C.

By: _____
Brandon L. Freed, Manager

By: _____
Ronald Freed, Manager

By: _____
Tony G. Forson, Manager

By: _____
Scott D. Cooper, Manager


3FC INVESTMENTS, L.L.C.

By: _____
Brandon L. Freed, Manager

By: _____
Ronald Freed, Manager

By: _____
Tony G. Forson, Manager

By: _____
Scott D. Cooper, Manager

10
Case 3:21-cv-05056-DPR   Document 19-1   Filed 09/09/21   Page 10 of 10